Your Honor:

As the Court is aware, on February 11, 2021, Your Honor issued a Memorandum and Order denying my motion for reconsideration as the lead Plaintiff in the Hecla Mining matter, on the basis that there are "potential risks and potential credibility issues" should I be appointed as lead plaintiff.

Although I respect the Court's authority, and do not ask that the Court change its ruling, I respectfully address the Court to clarify certain issues on the record. I do so because I believe strongly that my reputation and honor should not be impugned on the basis of unfortunate misunderstandings and the arguments of opposing counsel.

Initially, I have attached a brief biography to this letter should the Court, or anyone else, wish to review it. I became a Fulbright Scholar in 1965, I hold a Ph.D. in Electrical Engineering from Polytechnic Institute of Brooklyn (New York University), as well three other post graduate degrees, and received a Gold Medal from Cairo University in 1958, which is a very rare award from this venerable university. I began my career as probably the youngest lecturer in the history of the City College of New York. I left my teaching career in order to pursue other endeavors, but my first love was teaching.

In 1980, my first year in the brokerage business, Fernando Frota and his wife sued me and Prudential-Bache Securities. However, the case never went to trial and was settled for an undisclosed amount of money. At no time did I admit, and I still do not admit, to any wrongdoing. I did not contribute, at any time, any funds to the settlement or any costs for the defense of the case against me. For ten years, i.e. for many years after I left the firm, Prudential-Bache carried the cost of my defense. I joined Oppenheimer & Co., Smith Barney, Shearson Lehman Hutton, Inc., and Dean Witter Reynolds, Inc. In connection with my employment, these four leading financial firms had access to the Frota records and examined them. Yet, finding no wrongdoing on my part, these firms offered me large incentives to join them at the highest level of their business. After ten years of an investigation that never lead to a hearing before the American Stock Exchange and the death of the plaintiffs, Prudential-Bache Securities informed me that they would stop carrying the costs of my defense and, upon the advice of counsel, I agreed to a minor settlement to close the matter. I chose to settle because I did not wish to incur unnecessary legal expenses, but at no time did I ever admit, or could have been found, after the agreement with the American Stock Exchange, to have committed any improper acts.

With respect to the tax dispute I had with the IRS in 1983 and 1984, the Government was unsuccessful in its efforts to find me liable for any wrongdoing, and, in fact, the Government was awarded no taxes, interest, or penalties, as the Government had asked for, upon the matter being presented to the New York Court of Appeals.

With respect to my role as the Chairman of the Board of the Middle East Paper Company, I was a non-executive Chairman with no direct supervision of the running of the Company. The Company was wrongfully seized by the Government of the Arab Republic of Egypt. After litigation that took place in Egyptian Courts, the court in a binding decision found that the Company had been improperly seized by the Egyptian Government, and the Egyptian courts also

directed that I receive compensation for the illegal taking. Indeed, the Prime Minister of Egypt issued a decree directing that I be awarded just compensation. This matter is now the subject of an international arbitration as I, to this day, have not received any compensation, despite significant losses.

With respect to the alleged proxy fights with Quality Systems Inc., a/k/a NextGen, Inc., in 2014, Quality Systems sued me in a cross complaint for an alleged violation of my fiduciary obligations to the company. In July 2011, the Board adopted a new policy that sought to restrict my rights to my shares by preventing me from using them as collateral for any loan so long as I chose to serve as a director. The company and its general counsel never responded to me or to my lawyers in 2011 when I immediately advised the company that the company had no right to enforce this policy. In 2014, the company, using shareholder's equity, including mine, tried to impugn my motives, character, and integrity. They were not successful. Indeed, the highest Court in California found, based on the evidence presented at trial, that it is "perfectly legal and common place" for directors to borrow against their shares," my brokers informed NextGen whenever I opened his margin accounts, and that I had no duty to comply with that policy. Further, my suit against the company which is set for a jury trial this year.

Lastly, I had a relatively small dispute with a casino in Atlantic City which was amicably resolved outside of court.

I recognize that Your Honor's decision does not focus or determine whether or not the allegations against me are true, and, rather Your Honor's decision focuses only on "risks and credibility" issues should I have been appointed lead plaintiff. I accept the ruling of the Court on that basis, as I do not wish to unnecessarily burden the other class plaintiffs with sideshows over events that would not ultimately impugn my credibility. I have, to the best of my knowledge, suffered the greatest financial loss in the Hecla case, and was approached by several law firms to be lead plaintiff, which I was reluctant to do given my age and other commitments.

Nevertheless, I trust that the Court acknowledges the above information and that the record is clarified. I have not been found to have committed any improper or wrongful acts because I did not commit them, and there was never any evidence supporting the spurious allegations against me.

As I am approaching my 80th Birthday, I hope that I did shed some of my pride, and am not too interested in what others think of me, however I owe it to my immediate family (i.e. my wife and children), and my extended family, who have been revered for centuries by the Islamic world, to be aware of the facts. Therefore, it is important for me to supplement the record, in order to clarify the issues raised. It is with deep respect for the Court's decision and Your Honor that I am now seeking to supplement the record.

I greatly appreciate Your Honor's attention to these matters.

Respectfully,

Ahmed Hussein