**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ROBERT GLUCK, et al.,

                    *Plaintiffs*,

v.                                                          Case No. 1:19-cv-4883 (ALC)

                                                            ECF Case

HECLA MINING CO., et al.,

                    *Defendants*.

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Stefan Atkinson, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Joshua Z. Rabinovitz
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000

Kate Guilfoyle
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000

*Counsel for Defendants*

**Table of Contents**

Preliminary Statement ...................................................................................................... 1

Argument ........................................................................................................................... 3

I.    Plaintiffs' New Allegations Do Not Affect The Court's Dismissal Of The Claims Regarding Defendants' Forward-Looking Statements. ...................................... 3

II.   Plaintiffs' New Allegations Do Not Give Rise To A Strong Inference Of Scienter. ......... 4

    A.    Plaintiffs' Brief Makes Their Purported Motive Story Even Less Plausible. ......... 4

    B.    Plaintiffs' New Allegations Do Not Plead Actual Knowledge Of Falsity. ............. 6

        1.    Plaintiffs' New Allegations Are Not Pled with Particularity ..................... 6

        2.    Plaintiffs Do Not Allege Any Fact Known By A Defendant That Is Inconsistent With Any Statement Made By That Defendant ................... 10

    C.    Weighing All The Allegations, Scienter Is Not The Most Plausible Inference. ................................................................................................ 10

III.   Plaintiffs' New Allegations Do Not Plead With Particularity Any False Or Misleading Statement ................................................................................. 13

    A.    Plaintiffs' New Allegations Do Not Plead Any Of The Previously Alleged Misstatements Were Inaccurate Or Misleading. .................................... 13

    B.    Plaintiffs Do Not Allege With Particularity That Any Of The New Alleged Misstatements Are Actionable. .......................................................... 16

Conclusion ...................................................................................................................... 20

## <u>Table of Authorities</u>

<u>Cases</u>

*In re AstraZeneca Sec. Litig.*,
  2022 WL 4133258 (S.D.N.Y. Sep. 12, 2022)........................................................................11

*ATSI Commc'ns v. Shaar Fund*,
  493 F.3d 87 (2d Cir. 2007)...................................................................................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................................19

*In re Bemis Sec. Litig.*,
  512 F. Supp. 3d 518 (S.D.N.Y. 2021).................................................................................17

*Bristol Cnty. Ret. Sys. v. Adient*,
  2022 WL 2824260 (2d Cir. July 20, 2022).........................................................................10

*City of Hialeah v. FEI*,
  289 F. Supp. 3d 1162 (D. Or. 2018)...................................................................................17

*City of Taylor Police v. Zebra Technologies*,
  8 F.4th 592 (7th Cir. 2021) ..........................................................................................12, 13

*Das v. Rio Tinto*,
  332 F. Supp. 3d 786 (S.D.N.Y. 2018)..................................................................................8

*In re Eletrobras Sec. Litig.*,
  245 F. Supp. 3d 450 (S.D.N.Y. 2017)..................................................................................9

*In re EZCorp. Sec. Litig.*,
  181 F. Supp. 3d 197 (S.D.N.Y. 2016).................................................................................17

*Glaser v. The9*,
  772 F. Supp. 2d 573 (S.D.N.Y. 2011).................................................................................19

*Gray v. Wesco Aircraft*,
  454 F. Supp. 3d 366 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021).........................3

*Julianello v. K-V Pharm.*,
  791 F.3d 915 (8th Cir. 2015) ..............................................................................................17

*Kuriakose v. Fed. Home Loan*,
  897 F. Supp. 2d 168 (S.D.N.Y. 2012).................................................................................10

*Local No. 38 v. American Express*,
  724 F. Supp. 2d 447 (S.D.N.Y. 2010).............................................................................9, 19

*Maloney v. Ollie's Bargain Outlet*,
    518 F. Supp. 3d 772 (S.D.N.Y. 2021)..................................................................10

*Marsh Grp. v. Prime Retail*,
    46 F. App'x 140 (4th Cir. 2002) ........................................................................17

*McMahan v. Wherehouse Ent.*,
    900 F.2d 576 (2d Cir. 1990).................................................................................15

*Ong v. Chipotle Mexican Grill*,
    294 F. Supp. 3d 199 (S.D.N.Y. 2018)................................................................11

*In re Renewable Energy Sec. Litig.*,
    2022 WL 14206678 (2d Cir. October 25, 2022)...................................................9

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004).................................................................................15

*Shields v. Citytrust Bancorp*,
    25 F.3d 1124 (2d Cir. 1994)...................................................................................2

*In re Sketchers Sec. Litig.*,
    444 F. Supp. 3d 498 (S.D.N.Y. 2020)................................................................15

*In re Zagg Sec. Litig.*,
    797 F.3d 1194 (10th Cir. 2015) .............................................................................6

**Preliminary Statement**

Plaintiffs' opposition brief confirms they are offering the same story they did with their prior complaint: that "Defendants' positive statements that they could turn around the Nevada Mines and operate them on at least a cash flow neutral basis stood in stark contrast to the undisclosed negative conditions." (Dkt. #133 ("Opp.") at 2) But Plaintiffs' assertion is not consistent with the *facts* they allege and the public disclosures they do not dispute the Court can consider on a motion to dismiss. Those show Defendants' optimistic statements about improving performance at the Nevada Mines did not "stand in contrast" to negative actual conditions, they stood *beside* them. That is, Defendants disclosed—repeatedly and in detail—poor operational and financial performance of the Nevada Mines along with optimism that Hecla could right the course over time.

More specifically, even before Hecla announced its agreement to acquire the Nevada Mines, the Mines' then-owner, Klondex, publicly disclosed tens of millions of dollars of losses from operations at two of three mines (Hollister and Midas), and huge increases in production costs at the third mine (Fire Creek). After the acquisition was announced, but before it had occurred, Klondex further disclosed that during negotiations Hecla had decreased its offer *by $168 million*, 27%, because of the Mines' poor performance. Klondex also disclosed that it estimated a 34% reduction in cash flow from Fire Creek from 2018 to 2020.

Once Hecla completed the acquisition, it disclosed even worse news. Only 17 days after closing the acquisition, Hecla disclosed it was shutting down one of the three mines entirely, disclosed specific problems at the other two mines, and disclosed a decline in mineral reserves. Hecla rescinded its pre-acquisition expectation of positive cash flow from the Mines. Three months later Hecla issued its first financial report that included the Nevada Mines. It disclosed a *loss* from Nevada of $13.7 million. It also disclosed poor operational performance—costs of production 75% higher than Klondex's prior disclosure only a few months earlier and that were substantially higher

than the price at which Hecla could sell what the Mines produced. These disclosures did not purport to identify every specific problem at the Mines, but they did not have to—they disclosed the overall poor performance that the problems created. Thus, Plaintiffs have not pled investors were deceived about the Nevada Mines' performance; investors knew from the start that serious problems existed and were causing poor operational and financial performance. That Hecla was ultimately unable to operate the Mines profitably does not state a claim for fraud.

Nor can Plaintiffs pivot, as they do in their opposition brief, to argue Defendants knew but concealed that Hecla would not be able to successfully remediate the problems. "People in charge of an enterprise are not required to take a gloomy, fearful or defeatist view of the future; subject to what current data indicates, they can be expected to be confident about their stewardship and the prospects of the business that they manage." *Shields v. Citytrust Bancorp*, 25 F.3d 1124, 1129-30 (2d Cir. 1994). Plaintiffs cannot dispute that Defendants were upfront about the Nevada Mines' current performance. And Plaintiffs do not allege with particularity facts impeaching Defendants' optimism for future improvement. Plaintiffs argue some Defendants were aware of some problems in Nevada, but their brief does not identify any particularized allegation that any Defendant knew of a specific operational or financial result that contradicted *that Defendant's* publicly stated expectation. Moreover, even if some employees believed Hecla would not succeed in Nevada, that would not plead any Defendant *agreed* with the employees, for expectations about what is possible for the future are not immutable facts that must be accepted; they are opinions about what is possible. And Plaintiffs admit that Hecla had a track record in the past of succeeding with acquisitions where prior owners had failed. Finally, Defendants' optimistic statements about the future were accompanied by meaningful cautionary language and are protected by the safe harbor.

Plaintiffs' SAC confirms this Court's skepticism that Plaintiffs could fix their complaint's

deficiencies through an amendment. (Dkt. #116 ("Order") at 26) For the reasons explained herein and in Defendants' opening brief, the SAC fails to state a claim. Because Plaintiffs have failed to state a claim for a second time, dismissal should be with prejudice. *See, e.g., ATSI Commc'ns v. Shaar Fund*, 493 F.3d 87, 108 (2d Cir. 2007) (affirming dismissal with prejudice where plaintiffs were already granted "opportunity to plead fraud with greater specificity" after prior dismissal).

<u>Argument</u>

## I.    Plaintiffs' New Allegations Do Not Affect The Court's Dismissal Of The Claims Regarding Defendants' Forward-Looking Statements.

Defendants' opening brief explained that Plaintiffs' new allegations do not affect the Court's conclusion that twelve of the alleged misstatements were protected by the safe harbor for forward-looking statements because they were accompanied by meaningful cautionary language. (Dkt. #131 ("Def. Br.") at 10-12; Order at 12-16) Plaintiffs' brief does not challenge the Court's holding that those statements were forward-looking.[1] They do argue Hecla's cautionary language was not meaningful because "Defendants failed to disclose then-existing facts" (Opp. at 18), but this is the same argument the Court previously rejected. (Order at 14-16) Plaintiffs do not identify any new allegations that they argue change this holding. Moreover, their argument "conflates the actual knowledge and meaningful cautionary language prongs of the PSLRA. If the Court were to accept it, an allegation of actual knowledge of falsity would suffice to deprive a forward-looking statement of the protections of safe harbor even if there were meaningful cautionary language otherwise. Such a result would be contrary to the disjunctive nature of the safe harbor elements." *Gray v. Wesco Aircraft*, 454 F. Supp. 3d 366, 394-95 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021). Moreover, these statements are also protected by the safe harbor for the independent

---

[1] Plaintiffs dispute Defendants' argument that two of the *new* alleged misstatements were forward-looking. (Opp. at 14-16) Defendants respond to that argument below. *Infra* at 17, 20.

reason that Plaintiffs fail to plead any forward-looking statement was made with actual knowledge it was false or misleading, as discussed below. (Def. Br. at 11 n.3; *infra* at 6-10)

## II. Plaintiffs' New Allegations Do Not Give Rise To A Strong Inference Of Scienter.

### A. Plaintiffs' Brief Makes Their Purported Motive Story Even Less Plausible.

Defendants' opening brief explained that Plaintiffs' new motive allegations do not cure their previous failure to plead with particularity facts giving rise to a strong inference of scienter. (Def. Br. at 11-13) The motive theories Plaintiffs offer in their brief are neither cogent nor compelling; indeed, they contradict one another and none has any support in allegations of *fact*.

The SAC focuses on the same supposed motive the Court previously rejected (Order at 18): that Defendants were motivated to commit fraud regarding the Nevada Mines to obtain a higher credit rating for Hecla so it could refinance its debt, adding only that Defendants "planned" to refinance the debt but had to wait until May 2019 to avoid paying a premium. (SAC ¶ 139) However, Plaintiffs offer no cogent response to Defendants' argument how nonsensical it would be for Defendants to (1) intentionally waste $462 million on an acquisition they knew would fail, just to avoid paying some unspecified premium to refinance debt that was only $500 million *in total*; and then (2) to voluntarily abandon the supposed fraud after maintaining it for more than a year, in the very month when Hecla could finally refinance, *but without first refinancing*. (Def. Br. 11-12) The story Plaintiffs offer is not cogent, let alone compelling.

Plaintiffs argue they never alleged Defendants intentionally wasted $462 million. (Opp. at 25 n.21) But Plaintiffs assert Defendants knew, from due diligence, that the Nevada Mines had *irresolvable* problems that they knew would prevent Hecla from successfully turning around the Mines' performance. (*Id*. at 2) Plaintiffs offer no cogent explanation why Defendants would have chosen to pay $462 million for a failing asset to avoid whatever premium Hecla would have to pay to refinance its debt. And Plaintiffs offer *no explanation whatsoever* for why, *if* Defendants had

inexplicably chosen to do so, they would not have completed the plan and refinanced the debt in May 2019, rather than maintaining the supposed fraud *until* May 2019 and then coming out with their hands up rather than refinancing first.

Rather than explaining how their story is cogent and compelling, Plaintiffs respond by changing the story, offering two new, *conflicting* alternative stories that make their motive theory even *more* convoluted. First, Plaintiffs speculate, contradicting the SAC, that perhaps Defendants acquired the Nevada Mines "with the mistaken belief that they could improve costs, grow reserves and expand production, [but] by the time Defendants closed the deal, took possession and assessed the Nevada Mines in July-August 2018" they decided to commit fraud instead. (Opp. at 25) However, in addition to being implausible—because the story would still require Defendants to begin a fraud they knew they would have to maintain for months and then to abandon it with no reason right when they could finally achieve the supposed goal of the fraud—such a story concedes that the alleged misstatements made prior to August 2018 were not made with scienter. Moreover, the story is contradicted by Plaintiffs' new confidential source allegations, which (although they are not pled with sufficient particularity, *infra* at 6-10) purport to allege *pre-acquisition* knowledge by Defendants. (SAC ¶¶ 13(a)-(b)) In other words, Plaintiffs added these allegations precisely to attempt to allege information Defendants supposedly learned "during due diligence" (*id*. ¶ 13(a)), yet they now posit a scienter story in direct conflict with them.

Second, Plaintiffs also contend in the alternative that maybe Defendants "thought they could continue operating the Nevada Mines long enough to complete the refinancing, but the massive influx of water and persistent negative cash flow forced Defendants to shut down operations before they could take advantage of the fraud." (Opp. at 24) As an initial matter, Plaintiffs identify *no allegations* showing something happened in May 2019 that forced Defendants to abandon the

supposed fraud. Nor do Plaintiffs even explain *why* more water or worse cash flow would have caused Defendants to stop lying when they had already supposedly lied about them for more than a year, and had made it to the time when Hecla could refinance. Finally, this new story actually supports the *non-culpable* inference the Court held more plausible the first time around: that issues at the Nevada mines worsened over time. (Order at 19) The Court has already explained—correctly—that such a story weighs *against* an inference of scienter. (*Id*.) Plaintiffs now (unintentionally) support the Court's conclusion.[2]

**B.    Plaintiffs' New Allegations Do Not Plead Actual Knowledge Of Falsity.**

Defendants' opening brief explained that: (1) Plaintiffs' new confidential source allegations are not pled with the required particularity (Def. Br. at 7-10 & 13-15); and (2) even on their own terms, none of the allegations purports to allege any Defendant knew information that rendered a public statement *that Defendant made* false or misleading (*id*. at 15-17). Plaintiffs' brief barely acknowledges either of these arguments, much less provides a persuasive response.

**1.    Plaintiffs' New Allegations Are Not Pled with Particularity.**

Defendants' opening brief explained the deficiencies in Plaintiffs' new confidential source allegations (Def. Br. at 7-10) and then detailed how precedent supports dismissal based on those failures (*id*. at 13-15). For instance, one obvious way in which Plaintiffs' new allegations lack particularity (and credibility) is their allegation at the beginning of a lengthy recitation of CI 13's allegations that "*the following information* was provided to Defendants, in particular Radford and

---

[2] Plaintiffs abandon their new allegation that Defendants' salaries and bonuses provide a motive that supports an inference of scienter. (SAC ¶ 219; Def. Br. at 12-13) Plaintiffs argue that Radford and McDonald's "suspicious 'resignations'" after the Class Period support scienter. (Opp. at 21 n.16) But Plaintiffs fail to explain *why* the retirements imply fraud—rather than, at most, show officers suffering consequences for poor performance when an acquisition did not go as expected. Resignations (or even terminations) in the wake of poor performance do not imply fraud because they are equally likely without fraud. *E.g., In re Zagg Sec. Litig.*, 797 F.3d 1194, 1205 (10th Cir. 2015).

McDonald, *during due diligence (in or around November 2017 through March 2018)*." (SAC ¶ 13(a), emphasis added) But what "follows" in the subparts of ¶ 13(a) often makes explicitly clear that the information is *not* alleged to have been provided until later. (Def. Br. 7-8 (detailing examples)) In other words, Plaintiffs' own allegations show ¶ 13(a) is inaccurate, which then undermines all the other subparts of ¶ 13(a) that do not specify when they supposedly occurred.[3] Plaintiffs' only response is that ¶ 13(a) "reflects the common sense notion that time is linear and that the CI allegations reflect information Defendants learned over time during due diligence *and the Class Period*." (Opp. at 22, emphasis added) But that is not what ¶ 13(a) says—it says it presents information Defendants learned *only* during due diligence. Plaintiffs' brief now admits their allegation is not accurate. When a plaintiff relies on confidential source allegations, credibility is a primary issue. (Def. Br. at 14, citing authority) Here, it is irrelevant whether it is the fault of the source or of Plaintiffs' recitation: Either way it is plain that the confidential source allegations in the SAC are not credible and do not plead any Defendant's supposed knowledge *at the time* of an alleged misstatement by that Defendant.

Plaintiffs also do not meaningfully respond to the many other deficiencies identified in Defendants' opening brief regarding the new confidential source allegations—that the allegations often fail to allege: *which* Defendant supposedly learned information; that *any* Defendant learned a particular fact; *who* supposedly told a Defendant a particular fact; and *what* specific information

---

[3] CI 13's allegations also conflict with CI 14's supposed allegations that Defendants did not learn of the issues until *after* the acquisition, at which point (according to Plaintiffs and supposedly CI 14) "rather than coming clean to investors, Defendants covered up the problems in an effort to portray the acquisition as a good investment." (Opp. at 8) This is an *entirely* different scienter story than Defendants acquiring the Nevada Mines despite having learned during due diligence about problems, so they could inflate Hecla's credit rating and refinance its debt.

was supposedly conveyed. (Def. Br. at 8-9) Plaintiffs argue that "Paragraph 9 states that Defendants Radford and McDonald 'were directly informed.'" (Opp. at 22-23) But ¶ 9 is not an allegation of fact; it is ostensibly a summary of the new allegations. It does not allege what specific information Radford and McDonald were supposedly informed of, who informed them, or when they did so. Similarly, Plaintiffs argue CI 13 told them "Hecla's plan to turn around the Nevada Mines was contingent on obtaining a contract from Barrick Gold" to process refractory ore but that the price Barrick offered was too high. (Opp. at 4) Plaintiffs rely on ¶ 13(a)(iv) for this argument, but ignore that ¶ 13(a)(iv) does not allege *when* Barrick made its pricing offer, thereby making it impossible for them to plead any Defendant had that supposed information at the time he made any alleged misstatement. *E.g.*, *Das v. Rio Tinto*, 332 F. Supp. 3d 786, 813 (S.D.N.Y. 2018) (a plaintiff must plead that "specific contradictory information was available to the defendants *at the same time* they made their misleading statements") (emphasis in original). Finally, as explained in Defendants' opening brief, many of Plaintiffs' new allegations do not actually allege Defendants' knowledge at all; rather, Plaintiffs place two allegations next to each other in a proximity that implies particular information was provided to Defendants, but Plaintiffs do not actually allege that it was. (Def. Br. at 13-14) Plaintiffs again just ignore the issue.

Furthermore, Plaintiffs' brief underscores yet another failing with their new allegations: the allegations, even on their own terms, do not plead any knowledge by Baker or Hall—the two defendants who made nearly all the alleged misstatements. Rather, Plaintiffs only argue they have pled knowledge of Radford and McDonald.[4] Plaintiffs admit this on the first page of their brief (Opp. at 1: "Defendants Radford and McDonald … knew") Indeed, the section of Plaintiffs' brief

---

[4] Critically, Plaintiffs do not respond to the argument that the sole alleged misstatement made by McDonald is not adequately pled and not actionable. (Def. Br. at 23-24) Plaintiffs therefore have abandoned their claim against McDonald and their scienter allegations about him are irrelevant.

purporting to explain how Plaintiffs have pled Defendants' knowledge mentions Baker and Hall *only once*—and even then only to say Radford and McDonald "reported to Defendants Baker and Hall." (*Id*. at 21) But alleging that one officer knew something does not allege a different officer knew it. *See In re Renewable Energy Sec. Litig.*, 2022 WL 14206678, *3 & n.4 (2d Cir. October 25, 2022) (rejecting allegations of imputed knowledge and affirming dismissal); *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 466 (S.D.N.Y. 2017) ("In order to plead scienter adequately, the plaintiffs must allege facts supporting a strong inference with respect to each defendant."). As just one example (of many), for the March 19, 2018 alleged misstatements, Plaintiffs contend "Defendants Radford and McDonald were informed, or at least turned a blind eye to, material negative facts" about the Mines. (Opp. at 3) But all of the alleged misstatements made on that date were by Baker (SAC ¶ 96, quoting Dkt. #96-3), and Plaintiffs do not identify any allegation showing *Baker* knew any facts that contradicted his statements. Plaintiffs' brief tries to conceal this mismatch between who made alleged misstatements and who Plaintiffs argue knew information inconsistent with those statements by referring to what "Defendants" said, eliding *who* made the statement.

The law is clear: It is Plaintiffs' obligation to plead facts with particularity that show what specific information each Defendant knew, when and how they learned it, and from whom. *See, e.g.*, *Local No. 38 v. American Express*, 724 F. Supp. 2d 447, 461 (S.D.N.Y. 2010) (dismissing complaint where "a close examination of [the sources'] statements reveals the absence of any allegation that such data had been presented to management around the time of Defendants' allegedly misleading statements ... [the] allegations do not establish what specific contradictory information the Individual Defendants received or when they received it"). The SAC does not do so.

## 2.    Plaintiffs Do Not Allege Any Fact Known By A Defendant That Is Inconsistent With Any Statement Made By That Defendant.

Plaintiffs' brief does not address an independent problem: that Plaintiffs' assertions of Defendants' knowledge of issues at the Nevada Mines do not even purport to assert that any Defendant knew those issues would result in a particular operational or financial outcome—much less would prevent Hecla from achieving a publicly stated goal. (Def. Br. at 15-17) Plaintiffs' failure to even engage on this issue is telling, given that the Court discussed this deficiency at length in its previous dismissal ruling. (Order at 22-24); *see also Maloney v. Ollie's Bargain Outlet*, 518 F. Supp. 3d 772, 781 (S.D.N.Y. 2021) ("Even if the report did reflect a decline in inventory, it is not clear that such a decline would have undermined Ollie's overall sales projections..."); *Bristol Cnty. Ret. Sys. v. Adient*, 2022 WL 2824260, *2 (2d Cir. July 20, 2022) ("The existence of obstacles is not incompatible with statements that [the business] was advancing toward its goals.").

## C.    Weighing All The Allegations, Scienter Is Not The Most Plausible Inference.

For the reasons explained in Defendants' opening brief, Plaintiffs' scienter allegations are even weaker when weighed against potential competing inferences of non-culpable intent, which the Court must do. (Def. Br. 18-20) Plaintiffs' brief makes no attempt to weigh the competing inferences. It does not even respond to most of Defendants' arguments.

First, Defendants' disclosure of negative information throughout the Class Period weighs against scienter. (Def. Br. at 3-7, 18) "It defies logic to conclude that executives who are seeking to perpetrate fraudulent information upon the market would make such fulsome disclosures." *Kuriakose v. Fed. Home Loan*, 897 F. Supp. 2d 168, 185 (S.D.N.Y. 2012). Consequently, and as the Court previously concluded, the most plausible inference is that "when Defendants realized that their initial projections about the profitability of the Nevada Mines were no longer feasible, they disclosed these facts to the market." (Order at 19)

10

Plaintiffs respond that Defendants only disclosed some issues at the Mines, while failing to disclose others. (Opp. at 16, 24 n.20) But Defendants made *extensive* negative disclosures throughout the Class Period. (Def. Br. at 3-7) And critically, in addition to disclosing specific problems, Defendants also disclosed the Mines' poor overall operational and financial performance—that is, the bottom line figures that *include* the effects of all problems, whether specifically disclosed or not. (*Id.*) Defendants were under no obligation to disclose every specific problem. *See, e.g.*, *Ong v. Chipotle Mexican Grill*, 294 F. Supp. 3d 199 (S.D.N.Y. 2018) ("Having addressed these issues in general terms, Defendants did not omit material facts by failing to address, in more granular terms, every eventuality."); *In re AstraZeneca Sec. Litig.*, 2022 WL 4133258, *10 (S.D.N.Y. Sep. 12, 2022) (similar).

Second, Plaintiffs offer no response to Defendants' argument that if Plaintiffs' contentions are correct, it would mean that *Klondex* also made fraudulent statements—making an inference of scienter even less plausible. (Def. Br. at 18-19) Indeed, Plaintiffs' brief identifies even more examples of where this would be true. Specifically, Plaintiffs highlight their CI 13 allegation—again, information supposedly told to Radford during due diligence between November 2017 and March 2018 (SAC ¶ 13(a))—that the Mines' production "would drop to mid-80,000 ounces in 2018," down from "over 100,000 ounces of gold in 2017." (*Id.* ¶ 13(a)(viii)) However, Plaintiffs ignore that *Klondex* estimated in April 2018—*after* due diligence—that the Mines would produce between 176,000 and 190,000 ounces in 2018. (Dkt. #96-9 at 31) Thus, Plaintiffs' contention would have to be that *Klondex* was intentionally issuing false statements, and that Defendants realized it during due diligence and decided to acquire the Nevada Mines anyway and continue the fraud. Thus, the Court would have to infer not just that Defendants had fraudulent intent, but that an independent company and that company's executives also had fraudulent intent—an even less

likely story, and one with no supporting allegations of fact in the SAC.

Third, the Court reasoned in response to Plaintiffs' prior complaint that a more plausible inference than the inference of scienter is that the issues with the Nevada Mines "worsened over time." (Order at 19) Plaintiffs not only fail to dispute this is a strong inference, but they now *support* it by acknowledging that conditions worsened over time. *Supra* at 5-6. Plaintiffs' acknowledgement weighs against the inference of scienter, for if things worsened over time, that makes it more likely that Defendants' optimistic statements about improving the Mines' performance were sincere, based on what they knew at that time.

Finally, Plaintiffs also do not respond to the plausible inference that Defendants thought they could run the Nevada Mines better than Klondex had. (Def. Br. at 19-20) Indeed, Plaintiffs' brief highlights that Hecla had a track record of doing so with prior acquisitions of Greens Creek and Casa Grande. (Opp. at 23 ("Greens Creek and Casa Berardi did result in positive cash flows")) This adds yet more weight to the inference that Defendants thought Hecla could improve on Klondex's performance.

In weighing the totality of the allegations, the Seventh Circuit's recent decision in *City of Taylor Police v. Zebra Technologies*, 8 F.4th 592 (7th Cir. 2021), is particularly instructive. There, the court affirmed dismissal of a securities fraud action arising out of an acquisition that did not go as planned. The plaintiffs alleged the defendants "knew early in the process that consolidation would be costlier and more difficult than anticipated." *Id*. at 595. That was possible, the court reasoned, "[b]ut one can tell a different story: when consolidation began, [the defendants] had only limited information about the inner workings of [the acquired company]. Difficulties in melding the companies' operations would come to light only over time. In this account, their early positive statements stemmed not from fraudulent intent but limited knowledge and optimism. The process

did not proceed as smoothly as they hoped, and [the defendants] later disclosed these difficulties." *Id*. at 596. That is precisely the most plausible inference in this case as well.

## III.    Plaintiffs' New Allegations Do Not Plead With Particularity Any False Or Misleading Statement.

Defendants' opening brief explained why Plaintiffs' new allegations do not plead with particularity that Defendants made a false or misleading statement. (Def. Br. at 20-25) Plaintiffs' brief offers no persuasive response.

### A.    Plaintiffs' New Allegations Do Not Plead Any Of The Previously Alleged Misstatements Were Inaccurate Or Misleading.

**"High Grade" Mines.** Plaintiffs' brief does not identify any allegation of fact showing the Nevada Mines were not high grade. (Def. Br. at 20-21; Opp. at 3-4) And they ignore that Defendants' statements expressly explained what they meant by high grade. (Def. Br. at 21) Instead, Plaintiffs argue the statements were "misleading because Defendants failed to disclose that the purportedly 'high-grade' gold at Fire Creek was refractory gold" that "could not be processed on a cost-effective basis." (Opp. at 3) But Plaintiffs' brief *recognizes* that the grade of ore is distinct from the economics of extracting it; Plaintiffs admit "refractory ore may be 'high-grade.'" (*Id*. at 4) Thus, the statements that the Mines were high grade did not imply anything about processing costs. (Def. Br. at 20-21)[5] Moreover, Plaintiffs' argument ignores that Hecla separately *did* disclose processing costs—and they were high and increasing. Klondex had disclosed a 44% increase in costs of production at Fire Creek over the three-year period immediately before the acquisition. (Def. Br. at 2-3) Then, Hecla's first financial report after the acquisition disclosed that production costs had *skyrocketed* from what Klondex had reported, with costs of production going from

---

[5] Plaintiffs also ignore that *Klondex* also said the Mines were high grade. (Def. Br. at 2) Thus, if Defendants' statements were inaccurate, so were Klondex's—which then makes Plaintiffs' scienter allegations less plausible. *Supra* at 11-12.

Klondex's reported $1,107/ounce to $1,932/ounce. (*Id*. at 5) Not only was that a 75% increase in costs, but it moved the cost of production above the price of $1,205 at which Hecla could sell gold. (*Id*.) Plaintiffs' conclusory assertion that Defendants' accurate statements about high-grade ore misled investors about costs of processing that ore is contradicted by the record before the Court.

**Hatter Graben Permits.** On August 9, 2018, in response to a question whether Hecla had "all the permits in place" to access Hatter Graben, which is an undeveloped area adjacent to the Hollister mine, Baker responded: "Yes. We've got everything we need." (Dkt. #96-7 at 12) None of Plaintiffs' new allegations concern Hatter Graben at all, much less the permits Hecla had or lacked for it. Plaintiffs' brief mischaracterizes this statement about Hatter Graben as concerning Fire Creek. (Opp. at 8) The statement said nothing about Fire Creek. In a footnote, Plaintiffs argue the statement was misleading even if it only concerned Hatter Graben because the negative conditions at the Nevada Mines "were negatively affecting production needed to generate cash flows to fund development of the Hatter Graben, thus Defendants did not have 'everything' needed." (*Id*. at 8 n.6) But the statement addressed permits, not funding. Plaintiffs even admit this elsewhere in their brief. (*Id*. at 19 (inserting "permits" in a bracket to explain what Baker was referring to)) In any event, Plaintiffs do not allege facts showing Hecla lacked sufficient funding to develop Hatter Graben. Indeed, Plaintiffs affirmatively allege Fire Creek had $35-$50 million of cash flow in 2018, when Baker made his statement. (SAC ¶ 13(a)(xv)) They do not allege how much money Hecla needed to develop Hatter Graben.

**Capital Expenditures.** In December 2018, Hall stated: "There's no major capital expenditures that we can't fund out of the Nevada operations." (Def. Br. at 21) Plaintiffs argue the statement was false because "[b]y this point in time, the Nevada Mines were cash flow negative." (Opp. at 11) But Hecla had already *disclosed publicly a month earlier* that Nevada had losses of

14

millions of dollars. (Def. Br. at 5) Thus, the statement could not have been misleading about cash

flows. *See In re Sketchers Sec. Litig.*, 444 F. Supp. 3d 498, 516 (S.D.N.Y. 2020) ("The key question

in considering the misleading nature of a statement is 'whether defendants' representations, taken

together and in context, would have misle[d] a reasonable investor.'" (quoting *McMahan v.

Wherehouse Ent.*, 900 F.2d 576, 579 (2d Cir. 1990)). Nor do Plaintiffs allege facts showing the

statement was inaccurate, for they do not allege Hecla was planning any future major capital

expenditures at all.[6] Finally, Plaintiffs argue a part of Hall's statement they did not even allege in

the SAC—much less allege to have been false—was inaccurate. (*Compare* Opp. at 11 ("And

contrary to Defendant Hall's statement, the Nevada Mines did not have 'all the infrastructure' to

mine refractory gold ore.") *with* SAC ¶ 145 (not even quoting that part of the statement)) Plaintiffs

cannot amend or supplement their complaint with unalleged assertions in their brief.

**Risk Disclosures.** Defendants' opening brief explained that Hecla's risk disclosures were

not misleading because Hecla had already disclosed both specific problems at the Nevada Mines

and poor bottom line operational and financial performance—and the risk disclosures just warned

that things might get worse. (Def. Br. at 21-22) Defendants cited decisions of the Sixth and Ninth

Circuits, and a decision of another judge in this District, holding that reasonable investors do not

infer anything about the current state of operations from warnings about potential future harms.

(Def. Br. at 22) Plaintiffs argue "[t]hat is not the law in the Second Circuit," citing *Rombach v.

Chang*, 355 F.3d 164, 173 (2d Cir. 2004). (Opp. at 20 n.14) But *Rombach* affirmed dismissal of a

securities action, in part because the defendant's disclosures "provided a sobering picture of [the

---

[6] Hecla had disclosed a month earlier that it had made in the third quarter of 2018 a capital invest-
ment in Nevada of $15 million. (Def. Br. at 25, citing Dkt. #132-8 at 10 of 36) The point here is
that Plaintiffs do not allege Hecla planned any *further* capital expenditures beyond those funded
by the recent $15 million capital investment by Hecla. Thus, they do not plead facts showing Hall's
statement was inaccurate, regardless of Nevada's cash flows.

defendant's] financial condition and future plans." 355 F.3d at 176. So too here. Nothing in *Rombach* held there could be liability for risk disclosures; it held only that risk disclosures do not insulate a defendant for fraudulent statements of existing fact. As established in Defendants' opening brief (and below), Plaintiffs do not plead any fraudulent statement of existing fact. Thus, *Rombach* does not support Plaintiffs' argument that they have adequately pled an actionable statement.[7]

**B.    Plaintiffs Do Not Allege With Particularity That Any Of The New Alleged Misstatements Are Actionable.**

- On March 19, 2018, Hecla's announcement of its agreement to acquire Klondex quoted a statement from Baker: "We can improve costs, grow reserves and expand production … shareholders can benefit from the 162,000 gold equivalent ounces a year of production." (Def. Br. at 22-23) Plaintiffs now argue the first part of the statement was misleading because "Radford and McDonald had already been informed of unavoidable expenses and declining gold production." (Opp. at 5) But Radford and McDonald did not make the statement. Thus, even on their own terms, Plaintiffs do not argue the speaker (Baker) made a statement he knew was misleading. Furthermore, Plaintiffs do not plead with particularity facts supporting their assertion even for Radford or McDonald. Plaintiffs argue Radford and McDonald "were informed that the Nevada Mines were beholden to an expensive outsourcing contract with American Mining & Tunneling, LLC ("AMT") that was a key driver of the costs of production at Fire Creek." (*Id.*, citing SAC ¶ 13(a)(v)) But ¶ 13(a)(v) alleges only that "Defendants" were informed, at some unalleged time, "of the contract" with AMT that was an "unavoidable" cost. Plaintiffs do not allege *who* was informed, *when*, or that "Defendants" agreed the cost was unavoidable. (Def. Br. at 8) Nor do they

---

[7] Plaintiffs repeat their challenge to Hecla's April 2019 statement about a "minor amendment to the water discharge permit for Fire Creek." (Opp. at 12) It is the same argument they made on the prior motion to dismiss, which the Court rejected. (Order at 14)

allege that *some* unavoidable costs meant Hecla could not improve *overall* costs. Finally, Plaintiffs' response to Defendants' argument that the first part of the statement is forward-looking and protected by the safe harbor is incorrect. (*Id*. at 23) Plaintiffs argue "the statement makes representations concerning Defendants' present ability to improve operations." (Opp. at 15) But "[a]ll projections can be characterized as presently held beliefs"; they are still "forward looking because they relate to future economic performance." *Marsh Grp. v. Prime Retail*, 46 F. App'x 140, 146 (4th Cir. 2002). "In determining whether a statement is truly forward looking … the key is whether its truth or falsity is discernable only after it is made," which is the case here. *Julianello v. K-V Pharm.*, 791 F.3d 915, 921 (8th Cir. 2015); *see also In re Bemis Sec. Litig.*, 512 F. Supp. 3d 518, 532 (S.D.N.Y. 2021) (statements "concerning the Board's belief in such projections" were "forward-looking"); *City of Hialeah v. FEI*, 289 F. Supp. 3d 1162, 1173 (D. Or. 2018) ("To take the view that an expression of 'present belief' in a forward-looking statement is a 'present fact'—and therefore not itself a forward-looking statement—would work an end-run around the PSLRA's safe harbor provision."). The decision Plaintiffs cite in opposition—*In re EZCorp. Sec. Litig.*, 181 F. Supp. 3d 197 (S.D.N.Y. 2016) (cited at Opp. at 15)—is plainly off-point; in that case the statements were about historical practice.

Regarding the second part of Baker's statement, Plaintiffs continue to argue it "created the false impression that the Nevada Mines would continue to produce 162,000 ounces per year." (Opp. at 6) But, as Defendants explained, Baker *expressly* stated he was *not* saying that—that he was just using it as short-hand to refer to "what [Klondex] did in 2017." (Def. Br. at 23; Dkt. #132-5 at 15-16) Plaintiffs are not entitled to interpret the statement in a way Baker concurrently stated he did not mean. Furthermore, Plaintiffs still fail to identify any well-pled allegation of fact in the SAC showing that Baker knew in March 2018 that production would decline from what Klondex

produced in 2017. (Indeed, in April 2018, *after* Baker's statement, Klondex published an estimate of 2018 production of at least 176,000 ounces. *Supra* at 11.) Finally, on August 9, 2018, after owning the Mines for only three weeks, Hecla issued guidance for Nevada's 2018 production— for the first time. It estimated production from Nevada of 41,000 to 52,000 ounces for the remaining five months of 2018. (Ex. 28 at 8) Annualized, that would mean 98,400 to 124,800 ounces. So, after owning the Nevada Mines for only three weeks, Hecla estimated that, *at best*, 2018 production would decline 23% from 2017. And Hecla made this disclosure during the period when Plaintiffs allege Defendants were intentionally making "positive statements" that "stood in stark contrast to the undisclosed negative conditions." (Opp. at 2) The facts do not match Plaintiffs' story.

- In October-December 2018, Hecla published presentations that stated about Fire Creek: "Current reserves and resources provide mining inventory out to 2023." (Def. Br. at 24-25) Plaintiffs argue the statement was fraudulent because "it falsely represented that the Nevada Mines had five years of mining inventory, when in fact there was three years of mining inventory." (Opp. at 9) First, Plaintiffs' response to Defendants' argument that the statement was forward-looking and protected by the safe harbor fails. (Def. Br. at 24) Plaintiffs argue "Defendants' statements concerning *current* reserves and resources is not an estimate or expectation." (Opp. at 15, emphasis in original) But *in the same paragraph* Plaintiffs admit "the statement represented to investors that Defendants, at that time, were *expecting* at least five years of inferred and proven gold reserves." (*Id.*, emphasis added) Plaintiffs are correct that the statement is one of expectation. Thus, it is forward-looking. And Plaintiffs' argument that the statement was about Defendants' "present" expectation for the future is legally irrelevant because every forward-looking statement is a statement about present expectations for the future. *Supra* at 17. Plaintiffs' position would render the safe harbor a nullity. Second, the allegation Plaintiffs rely on for their argument pleads that the

"life of the mine" was three years as of September 2018. (Opp. at 10, citing SAC ¶ 13(b)(vii)) But Plaintiffs do not respond to Defendants' explanation that "life of mine" refers to mineral reserves only, whereas the alleged misstatement was about "reserves *and resources*"—so, a different, more expansive metric. (Def. Br. at 24; Dkt. #132-1 at 18 (describing the difference between reserves and resources)) Plaintiffs' allegation about reserves therefore does not contradict Hecla's statements about reserves *and resources*. In any event, Plaintiffs do not allege with particularity facts showing any Defendant was told about the supposed decrease in the life of the mine. (*Id*. at 25) Plaintiffs argue "[t]he context and reasonable inference from the allegations in ¶ 13(b)(vii) is that Defendant Baker was informed that the life of the mine had contracted." (Opp. at 10 n.8) But Plaintiffs offer no explanation supporting their argument. *Local No. 38 IBT*, 724 F. Supp. 2d at 461 ("[A] close examination … reveals the absence of any allegation that such data had been presented to management."). Paragraph 13(b)(vii) alleges Fire Creek managers proposed increased spending to Baker and that he was "shocked." But Plaintiffs affirmatively allege that "[t]he LOM on the books was 5 years" and it was only "in reality" that "it was closer to 3 years." (SAC ¶ 13(b)(vii)) Plaintiffs do not allege anyone told Baker about the "reality," and they *admit* what he would have seen on the "books" was a life of mine of five years.[8]

- On November 8, 2018, Baker stated: "we're not anticipating the need to make significant contributions into Nevada"; "we think we can run it pretty close to cash flow neutral"; and "we don't believe we will need to make significant new financial investment to put the mine on the

---

[8] Moreover, Plaintiffs based their "reasonable inference" argument on *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). (Opp. at 10 n.8) But Plaintiffs' pleading obligations are dictated by Rule 9(b) and the PSLRA, not just *Twombly*. Plaintiffs' allegations are deficient under the heightened pleading standard. *E.g.*, *Glaser v. The9*, 772 F. Supp. 2d 573, 591 (S.D.N.Y. 2011).

same improvement path that we have seen at Greens Creek and Casa Berardi." (SAC ¶ 135) Plaintiffs argue these statements disregarded negative performance at the Mines and that the "trend [was] expected to continue into 2019." (Opp. at 11) As an initial matter, Plaintiffs once again ignore the Court's Order holding these statements were forward-looking and protected by the safe harbor. (Order at 13-15; Def. Br. at 25) In any event, Hecla disclosed actual negative performance. And Plaintiffs do not allege with particularity that Baker expected that "trend" to continue. Plaintiffs treat forecasted future production costs and performance as facts that are objective and about which people cannot disagree. That is wrong. As Plaintiffs now admit, Hecla publicly disclosed when acquiring Klondex that it sought to improve performance—to change the performance metrics that Plaintiffs treat as being unalterable or perfectly forecastable in the future. (Opp. at 2, 3) But, as precedent recognizes, performance can improve over time, and officers of a corporation may believe they can improve performance even though other employees disagree. (Def. Br. at 14-15, citing precedent) Even if the employees are later proved correct, that does not show the officers knew in advance their view was wrong. (*Id.*) Finally, Plaintiffs offer no response to the fact that Hecla disclosed *the same day as the alleged misstatement* that it had invested $15 million in capital into Nevada. *Supra* at 15 n.6. Plaintiffs do not allege any facts showing Baker believed at that point that more would be needed.

## Conclusion

For the foregoing reasons, the Court should dismiss this action with prejudice.

Dated: July 21, 2023

Respectfully submitted,

/s/ Joshua Z. Rabinovitz
Joshua Z. Rabinovitz
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000
Joshua.Rabinovitz@kirkland.com

Stefan Atkinson, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
Stefan.Atkinson@kirkland.com

Kate Guilfoyle
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2000
Kate.Guilfoyle@kirkland.com

*Counsel for Defendants*