**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ROBERT GLUCK, et al.,** | |
| **Plaintiffs,** | |
| **-against-** | **19-cv-4883 (ALC)** |
| **HECLA MINING CO. et al.,** | **OPINION AND ORDER** |
| **Defendants.** | |

**ANDREW L. CARTER, JR., United States District Judge:**

Lead Plaintiffs Robert Gluck, Emma Gluck and Sarah Gluck ("Plaintiffs") bring this securities class action against the Hecla Mining Company ("Hecla"), Phillips S. Baker, Jr. ("Baker"), Lindsay A. Hall ("Hall") and Lawrence P. Radford ("Radford") (collectively "Defendants") alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder on behalf of themselves and a class of all persons who purchased the publicly traded common stock of Hecla between March 19, 2018 and May 8, 2019 (the "Class Period"). Currently pending before the Court is Defendants' motion to dismiss the Second Amended Complaint (ECF No. 130). For the reasons stated below, the motion is **GRANTED**.

## BACKGROUND

### A. Factual Background[1]

This dispute arises from Hecla's July 2018 acquisition of Klondex Mines, Ltd. ("Klondex"). On March 19, 2018, Hecla, a mining company, announced that it was acquiring Klondex—a company that operated three high-grade gold mines in Nevada (the "Nevada

---

[1] The following facts are drawn from the Second Amended Complaint (ECF No.124, "SAC") and documents relied upon therein.

Mines"). (Sec. Am. Compl., ECF No. 124 ¶ 7.) In sum, Plaintiffs allege that Defendants made materially false and misleading statements and failed to disclose material adverse facts regarding Hecla's business, operations and prospects related to Klondex and the Nevada Mines. (*See generally id.*)

### i. The Parties

Lead Plaintiffs purchased Hecla common stock during the Class Period and have brought suit on behalf of all other individuals similarly situated against Hecla and several of its officers: (1) Defendant Baker, Hecla's CEO, (2) Defendant Hall, Hecla's CFO and Treasurer, (3) Defendant Radford, Hecla's Vice President of Operations, and (4) Defendant McDonald, Hecla's Vice President of Exploration (the "Individual Defendants"). (*Id.* ¶¶ 39–45.) Plaintiffs allege that the Individual Defendants were provided with copies of Hecla's press releases and "possessed the power and authority to control the contents of Hecla's press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market." (*Id.* ¶ 45.)

### ii. The Nevada Mines and Defendants' Due Diligence

Plaintiffs allege that Hecla began "technical due diligence of the Nevada Mines" in or around November 2017. (*Id.* ¶ 49.) This included access to the mines and Klondex's personnel, onsite physical inspections of the condition of the properties, and access to documents and records maintained by the mines. (*Id.* ¶ 49.) Plaintiffs allege that through this due diligence, Defendants learned of several material problems with the Nevada Mines which would affect the ability of the Mines to be profitable once the acquisition of Klondex was completed; however, Plaintiffs allege that Defendants did not disclose these problems to the public. (*Id.* ¶¶ 173, 176.)

In support of Plaintiff's assertion that Defendants were aware of or recklessly disregarded the truth of the problems plaguing the Nevada Mines, Plaintiffs primarily rely on the statements of twelve Confidential Informants ("CIs") who assert that there were significant operational problems affecting the Nevada Mines since before Hecla announced the potential acquisition. (*Id.* ¶ 64.)  These CIs consist of former employees, including miners, surveyors, operators, IT support professionals, environmental coordinators, engineers.  (*See id.* ns.6–17.)  The problems included a serious water management issue at the Fire Creek mine whereby water continually collected at the bottom of the mine.   (*See id.* ¶¶ 58, 59, 60, 67, 68, 69, 71, 77, 80, 92.)  Plaintiffs also allege that the Nevada Mines "lacked equipment needed to excavate and process material." (*Id.* ¶¶ 66, 68.)  Additionally, one informant stated that he knew that the cost of excavation of gold ore at Fire Creek would increase because the pH balance in the "wash plant" where the ore is extracted was higher than previously thought.  (*Id.* ¶ 68.)  Another informant stated that two veins at the Fire Creek mine did not contain high grade ore and were thus unable to "produce profitable material."  (*Id.* ¶ 90.)  Several informants also allege that throughout the Class Period, problems of poor ore quality plagued the Nevada Mines.  (*see, e.g., id.* ¶ 94.)

### iii. Defendants' Alleged Misstatements and Omissions During the Class Period

Plaintiffs allege that Defendants did not disclose the extent or severity of the above-mentioned problems with the Nevada Mines beginning on March 19, 2018, when it publicly announced its acquisition of Klondex.  These misstatements and omissions were made in Hecla's routine filings with the Securities and Exchange Commission ("SEC") and associated press releases and public statements.

On March 19, 2018, in announcing the potential Klondex acquisition, Defendant Baker, Hecla's CEO, stated that he expected the deal to be "accretive on many important financial and credit metrics" and that the Nevada operations would require "a small amount of capital" and would be "cash flow positive." (*Id.* ¶¶ 36, 96-97, 99.)  The press release indicated that "[a]fter extensive due diligence . . . We expect this transaction to be accretive on many important financial and credit metrics" and that "Fire Creek is a cornerstone producing asset with robust cash flows." (*Id.* ¶¶ 7, 96, 99.)  Additionally, during a conference call with investors and analysts, Baker stated that the Nevada Mines "will be cash flow positive for us." (*Id.* ¶¶ 22, 99)

On May 10, 2018, in Hecla's first quarterly report filed with the SEC on Form 10-Q, Plaintiffs allege that Hecla failed to disclose "[t]he ongoing material, negative problems that were negatively affecting operations and that were growing worse at the Nevada Mines." (*Id.* ¶ 108.)  In a conference call with investors, Baker said: "When we looked at Klondex … we saw extraordinary grades." (*Id.* ¶ 103.)  Plaintiffs also allege that the cautionary language that warned of future potential risks that "may" or "could" adversely affect Hecla's business were insufficient and materially false and misleading because those "future" risks had in fact already materialized. (*Id.* ¶¶ 109-11.)

On July 23, 2018, the day the acquisition of Klondex was completed, Defendant Baker stated publicly that "Hecla now has three high-grade mines in Nevada" that would "immediately add production and cash flow." (*Id.* ¶ 115.)  A few days after the acquisition was finalized, on August 9, 2018, Hecla issued a press release that reported its financial results for the second quarter of 2018 which stated "[w]e have now closed the acquisition of the high-grade Nevada mines . . . Our plan is to operate the mines and mill as one unit, allocating the workforce and

capital to generate margins and focus on profitability, not just on production for production's sake." (*Id.* ¶ 118.) On the associated conference call, Baker said that he "expect[ed]" that the Nevada assets would be "basically self-funding" for 2018. (*Id.* ¶¶ 120, 121.) Additionally, in response to an analyst's question about permits for the Nevada Mines, Baker stated "Yeah. We've got everything we need." (*Id.* ¶ 123.) Hecla also incorporated into its Form 10-Q its prior disclosures about the potential future risks that could affect the Nevada operations, which Plaintiffs maintain were fraudulent. (*Id.* ¶ 128).

On November 8, 2018, during a conference call regarding Hecla's financial results, Baker stated that "[w]e think we can run it pretty close to cash flow neutral" and that the Nevada Mines would allow them to generate "margin" that "should not only improve our equity value, but also our credit metrics and the rating agencies are beginning to take notice of this as exemplified by our bond rating upgrade by S&P." (*Id.* ¶¶ 125, 137.) Regarding the Fire Creek mine, Defendant Radford, Hecla's Vice President of Operations, explained: "we encountered existing poor ground conditions, many development phases were in unconsolidated tuff, which is basically clay rich, add a little bit of water and the conditions turn to mush" but also stated that "our goal for Nevada operations is that the operations are cash-neutral[.]" (*Id.* ¶ 137.) In the associated press release, Hecla also disclosed that "[t]he mining of select high-grade zones [at Fire Creek] has been moved from Q3 2018 into 2019 as the ore extended vertically farther than expected, and development is needed for full extraction of the ore panels." (*Id.* ¶ 133) Hecla also incorporated into its Form 10-Q its prior disclosures about the potential future risks that could affect the Nevada operations, which Plaintiffs maintain were fraudulent. (*Id.* ¶ 141)

Plaintiffs allege that Defendants' disclosures during this time continued to mask the true extent and severity of problems plaguing the Nevada Mines. On December 4, 2018, during a

conference call, Hall stated that "[t]here's no major capital expenditures that we can't fund out of the Nevada operations.  So we're really quite pleased with the transaction."  (*Id.* ¶ 129.)  On February 14, 2019, Hecla issued a press release with information about its exploration programs, including at Fire Creek.  (*Id.* ¶ 136)

Beginning in early 2019, Plaintiffs allege that Defendants began to make "partial disclosures" of the truth regarding the condition and profitability at the Nevada Mines.  On February 21, 2019, Hecla issued a press release filed with the SEC on Form 8-K which explained that Defendants had experienced "'challenges' with the conditions at the Nevada Mines."  (*Id.* ¶ 131.)  In the associated conference call, Baker and Hall both stated that they expected the Nevada operations to be "cash flow positive" for 2019, despite some of the challenges with the mines that had been disclosed in the Form 8-K.  (*Id.* ¶ 138.)  Regarding the Fire Creek mine, Defendant Radford disclosed that "we're looking at a bit more of a mobile dewatering plant so that we're not managing the water underground."  (*Id.* ¶ 140.)  Additionally, Hecla identified problems with the "tuff" material that it encountered at the Nevada Mines which would require additional equipment and costs to properly mine.  (*Id.* ¶ 154.)

On February 22, 2019, Hecla's Form 10-K disclosed risks that may or could affect the Nevada Mines, which Plaintiffs maintain was insufficient because the language did not fully disclose that these risks had in fact already occurred.  (*Id.* ¶¶ 164–66.)  After this "partial" disclosure, Hecla's stock price declined from of $2.39 per share to $2.74 per share.  (*Id.* ¶ 156.)  However, Plaintiffs maintain that this price was still "artificially inflated" because Defendants had not disclosed the full extent of the problems at the Nevada Mines.  (*Id.* ¶ 157.)

On April 18, 2019, Hecla issued a press release disclosing: "[a] minor amendment to the water discharge permit for Fire Creek is expected in the second quarter which should enable a

higher discharge rate", which Plaintiffs maintain was false and misleading because it implied that the water discharge problems at the Nevada Mines were minor, when they were not.  (*Id.* ¶ 169.) This announcement caused a further share price decline from $2.28 per share to $2.15 per share. (*Id.* ¶ 170.)  However, Plaintiffs allege that this disclosure failed to fully explain the extent of the problem, whereby excess water had been leaking at the Fire Creek since 2017 and throughout the Class Period.  (*Id.* ¶ 171.)  Plaintiffs note that "Hecla had been shipping water at great expense from the dewatering storage pond at Fire Creek to the Midas mine" because of the extent of water problems at the Fire Creek mine.  (*Id.* ¶ 171.)

### iv.  Defendants' Announcement of a Review of Spending and Operations at the Nevada Mines

Plaintiffs allege that Defendants finally fully disclosed the extent and severity with the issues plaguing the Nevada Mines in May 2019.  On May 9, 2019, during a conference call with investors, Defendant Baker discussed the review for the Nevada Mines and the suspension of operations at those mines.  (*Id.* ¶ 173.)   During this conference call, Defendant Baker also discussed when these problems first began to emerge, stating:

> "A year ago when doing the due diligence, we recognized certain problems with Fire Creek dealing with the tuff material, managing the water, equipment availability, getting enough development to have consistent production, lack of characterization of ore types.
>
> And while we've made progress in dealing with the issues we saw the short answer is it's not been enough. The advance rate has increased, but the mill tonnage decreased by a similar percentage in the last quarter.
>
> And while we've done things to manage the water, the amount of water has increased, making the conditions worse. This has limited our access, and while they're not insurmountable and not a large amount of dollars, they will require quarters to construct some infrastructure and get some permit limits changed."

(*Id.* ¶ 173.)  Plaintiffs maintain that this disclosure "shocked investors" and caused Hecla's share price to decline from $2.04 per share to $1.77 per share.  (*Id.* ¶¶ 148–152.)

The next day, on May 10, 2019, Hecla filed its quarterly Form 10-Q, which stated:

> "We are currently undertaking a review of spending at the Nevada operations which may result in the following changes at the Fire Creek mine: a reduction in capital spending; ceasing current production and only developing to spirals 9, 10 and 11; or a temporary cessation of all mine operations at Fire Creek.  As a result, the values of certain components of properties, plants, equipment and mineral interests could be adjusted in the second quarter of 2019 when we expect to finalize the allocation of the Klondex purchase price.  The outcome of the review may constitute a triggering event requiring assessment of the carrying value of our long-lived assets at Fire Creek with the potential to impact near term estimated cash flows. . . . We may recognize an impairment, which could be material, if the carrying value of the assets exceeds the estimated future undiscounted cash flows expected to result from their use and eventual disposition. . . ."

(*Id.* ¶ 180.)

Scotiabank characterized the announcement as a "a complete reversal" in Hecla's outlook on the Nevada mine since Hecla acquired Klondex.  (*Id.* ¶ 181.)  This announcement caused Hecla's stock price to decline from $1.77 per share to $1.56 per share.  (*Id.* ¶ 184.)

On June 6, 2019, following its review of the Nevada Mine operations, Hecla issued a press release indicating that "changes are being made with the goal of turning [the Nevada Mines] into a positive cash flowing unit."  (*Id.* ¶ 185.)  Hecla determined that it would continue to mine "developed ore" at Fire Creek, that Midas would continue production through the end of 2019, but that the Hollister mine would be shut down.  (*Id.*)  After this announcement, the S&P downgraded Hecla's credit rating.  (*Id.* ¶¶ 191-92.)

In February 2020, Hecla disclosed that it refinanced the Company's debt at a higher interest rate. (*Id.* ¶ 201.)

### B. Procedural Background

Plaintiffs filed the Complaint on May 24, 2019. (ECF No. 1.) Plaintiffs filed a consolidated Amended Complaint on September 9, 2020. (Am. Compl., ECF No. 86.) On May 25, 2020, the Court appointed the Gluck Family as Lead Plaintiffs and consolidated this action with *Bhattacharya v. Hecla Mining Co. et al.*, 1:19-cv-05719 (ALC). (ECF No. 80.)

Defendants filed a motion to dismiss on December 9, 2020, (ECF No. 95), which the Court granted on February 22, 2023 (ECF No. 116, "Ord."). Plaintiffs filed their Second Amended Complaint on April 4, 2023 (ECF No. 124), and Defendants filed their Motion to Dismiss the Second Amended Complaint on May 12, 2023 (ECF No. 130). Plaintiffs filed their Opposition on June 21, 2023 (ECF No. 133). Defendants filed their Reply on July 21, 2023 (ECF No. 137). This Motion is fully briefed.

### LEGAL STANDARDS

### A. Motions to Dismiss under Rule 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, the Court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Claims should be dismissed when a plaintiff has not pleaded enough facts that "plausibly give rise to an entitlement for relief." *Id.* at 679. A claim is plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). While not akin to a "probability requirement," the plaintiff must allege sufficient facts to show "more than a sheer

possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

Accordingly, where a plaintiff alleges facts that are "'merely consistent with' a defendant's

liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 557).  The Court's function on a motion to dismiss is "not to

weigh the evidence that might be presented at a trial but merely to determine whether the

complaint itself is legally sufficient."  *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

In deciding a motion to dismiss a securities action, the Court may consider "any written

instrument attached to the complaint, statements or documents incorporated into the complaint

by reference, legally required public disclosure documents filed with the SEC, and documents

possessed by or known to the plaintiff and upon which it relied in bringing the suit" of which a

court may take judicial notice.  *Sgalambo v. McKenzie*, 739 F.Supp.2d 453, 470 (S.D.N.Y. 2010)

(quoting *ATSI Commc'ns,* 493 F.3d at 98); *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)).

### B.  Section 10(b) and Rule 10b-5

To plead a claim under Section 10(b) and Rule 10b-5, a plaintiff must adequately allege:

"(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection

between the misrepresentation or omission and the purchase or sale of a security; (4) reliance

upon the misrepresentation; (5) economic loss; and (6) loss causation."  *Halliburton Co. v. Erica*

*P. John Fund, Inc.*, 573 U.S. 258, 267, (2014); *Waggoner v. Barclays PLC*, 875 F.3d 79, 93 n.23

(2d Cir. 2017).

"'The test for whether a statement or omission is materially misleading'. . . is not whether

the statement is misleading in and of itself, but 'whether the defendants' representations, taken

together and in context, would have misled a reasonable investor.'"  *In re Vivendi S.A. Sec.*

*Litig.*, 838 F.3d 223, 250 (2d Cir. 2016) (quoting *Rombach v. Chang*, 355 F.3d 164, 172 n.7 (2d

Cir. 2004). This is an objective test that looks to the understanding of an "ordinary investor." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 187 (2015). Importantly, "literal accuracy is not enough. An issuer must as well desist from misleading investors by saying one thing and holding back another." *Id.* at 192. "However, Section 10(b) and Rule 10b-5(b) "do not create an affirmative duty to disclose any and all material information." *Chapman v. Mueller Water Prod., Inc.*, 466 F. Supp. 3d 382, 397 (S.D.N.Y. 2020) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011)). Thus, issuers have a duty of disclosure "only when necessary 'to make . . . statements made, in light of the circumstances under which they were made, not misleading.'" *Matrixx*, 563 U.S. at 44 (quoting 17 C.F.R. 240.10b-5(b)).

### C. Fed. R. Civ. P. 9(b) and the PSLRA

When a plaintiff has alleged securities fraud claims, the complaint is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Rule 9(b) requires that the complaint "state with particularity the circumstances constituting fraud or mistake." To satisfy the particularity requirement, a complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 403 (2d Cir. 2015).

The PSLRA holds private securities plaintiffs to an even more stringent pleading standard. Under the PSLRA, a plaintiff must "(1) specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading; and (2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (internal

citation and quotation marks omitted) (quoting 15 U.S.C. § 78u-4(b)).  Under this heightened

pleading standard for scienter, a plaintiff will sufficiently allege scienter and a complaint will

survive, "only if a reasonable person would deem the inference of scienter cogent and at least as

compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S.

at 324.

## DISCUSSION

When dismissing the first amended complaint, this Court found that "[g]iven Defendants'

disclosures regarding the negative conditions at the Nevada Mines and the paucity of allegations

supporting Plaintiffs' allegations of scienter and falsity, the Court is doubtful that an amendment

would certainly cure these defects." Ord. at 26. Such doubt has been substantiated.  Drawing all

reasonable inferences in Plaintiffs' favor, the Court again finds that Plaintiffs have not articulated

sufficient factual allegations to carry their assertions beyond the speculative level:  Plaintiffs new

allegations do not plead with particularity any false or misleading statement, and many of

Defendants' alleged misstatements are protected by the PSLRA safe harbor.

**I.      Plaintiffs Do Not Plead with Particularity Any False or Misleading Statement**

**A.  Safe Harbor for Forward-Looking Statements**

A "forward-looking statement" is (1) "a statement containing a projection of revenues,

income. . . or other financial items," (2) "a statement of the plans and objectives of management

for future operations, including plans or objectives relating to the products or services of the

issuer," or (3) "a statement of future economic performance."  15 U.S.C. § 78u-5(i)(1)(A)-(C);

*see also In re Vivendi*, 838 F.3d at 246.  These statements are subject to the PSLRA's "Safe

Harbor", which provides, in relevant part, that:

> [A] defendant is not liable if (1) the forward-looking statement is
> identified and accompanied by meaningful cautionary language,

> (2) the forward-looking statement is immaterial, or (3) the plaintiff
> fails to prove that the forward-looking statement was made with
> actual knowledge that it was false or misleading. Because the safe
> harbor is written in the disjunctive, a forward-looking statement is
> protected under the safe harbor if any of the three prongs applies.

*Id.* at 245–46 (citation omitted).   To qualify as "meaningful," cautionary language must "convey[] substantive information" and cannot be "boilerplate" or "vague."   *Id.* at 247 (citation omitted).  However, "[t]he cautionary language need not directly precede or follow the forward-looking statement for it to be meaningful."  *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 392 (S.D.N.Y. 2020), aff'd, 847 F. App'x 35 (2d Cir. 2021) (citing *Slayton v. American Exp. Co.*, 604 F.3d 758, 768–69 (2d Cir. 2010)).

Plaintiffs do not put forth any new allegations, with specificity, that would alter the Court's holding that most of the challenged statements were forward-looking and thus inactionable under PSLRA's safe harbor provision. And Plaintiffs do not allege with particularity that any of the newly alleged misstatements are actionable. Below are the newly alleged misstatements:

- On March 19, 2018, Hecla's announcement of its agreement to acquire Klondex quoted a statement from Baker: "We can improve costs, grow reserves and expand production … share-holders can benefit from the 162,000 gold equivalent ounces a year of production." (SAC ¶ 96 "Statement 1")

- On May 10, 2018, during a conference call with investors and analysts in which the Individual Defendants participated, Defendant Baker represented that concerning the Nevada Mines "[w]e saw three large, in this case, Nevada properties as big as those that we already have, and we saw extraordinary grades." (SAC ¶ 103 "Statement 2")

- On May 10, 2018, McDonald said on an earnings call: "I'm very excited about the exploration opportunities in northern Nevada once the acquisition of Klondex is concluded … [I]t is rare that you can acquire 110 square miles of exploration ground in northern Nevada that lies within or at the intersection of prolific trends or rifts. They have a great team of geologists, with a significant understanding of the properties, and we look forward to working together to realize the potential of this ground." (SAC ¶ 105 "Statement 3")

- On July 23, 2018, when announcing the Company had closed the acquisition of the Nevada Mines from Klondex, Baker stated: "With this acquisition, Hecla now has three high-grade mines in Nevada, one of the best mining districts in the world . . . These assets immediately add production and cash flow, and because they are a good fit with Hecla's expertise, we believe there is significant opportunity for improvement in the mines' productivity and consistency."  (SAC ¶ 115 "Statement 4")

- In October-December 2018, Hecla published presentations that stated about Fire Creek: "Current reserves and resources provide mining inventory out to 2023." (SAC ¶¶ 130, 143, 147 "Statement 5")

- On November 8, 2018, Baker stated: "we don't believe we will need to make significant new financial investment to put the mine on the same improvement path that we have seen at Greens Creek and Casa Berardi." (SAC ¶ 135 "Statement 6")

- During a December 4, 2018 conference call, Hall stated: "There's no major capital expenditures that we can't fund out of the Nevada operations. So we're really quite pleased with the transaction" (SAC ¶ 145 "Statement 7")

- A January 2019 investor presentation stated: "Mine Life at our most important mines are long and getting longer." (SAC ¶ 151 "Statement 8")

Of the newly alleged misstatements, the Court finds that Statements 1 and 3-8 are forward-looking. These statements "fall squarely within the definition of 'a statement containing a projection of ... income (including income loss), earnings (including earnings loss) per share, ... or other financial items" and "a statement of future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management." *Gray*, 454 F. Supp. 3d at 386 (quoting 15 U.S.C. § 78u-5(i)(1)(A) & (C)). However, the Court finds that Statement 2 is not forward-looking and thus not covered by the statutory safe harbor.

The Court finds that Defendants' forward-looking statements were accompanied by meaningful cautionary language.   Meaningful cautionary language must include the "important factors that could realistically cause results to differ materially." *Slayton*, 604 F.3d at 773.   This language must be both "extensive and specific. . . .and must contain substantive company-specific warnings." *Gray*, 454 F. Supp. 3d at 392 (internal quotations and citations omitted). Hecla's Form 8-K, issued the same day the Klondex acquisition was finalized, contained statements cautioning that the report contained "forward looking statements" which involved "a number of risks and uncertainties that could cause actual results to differ materially from those projected, anticipated, expected or implied."   (ECF No. 96-2.)   The presentation also incorporated the risk disclosures made in Hecla's Form 10-K and 10-Q Reports.   (*Id.*)  Hecla's

Form 10-K from year-end 2017 contained discussion of specific risk factors that could prevent Hecla from realizing all the anticipated benefits of the Klondex acquisition. (ECF No. 96-16 at 17.) Those risks included "difficulties integrating operations and personal, higher than expected acquisition and operating costs. . . " (*Id.*) The disclosure also notes that various factors could impact its overall growth strategy, including "lower than expected ore grades" and "labor problems". (*Id.* at 10, 16.) The disclosure also noted that the acquired properties "may be in an unexpected condition". (*Id.* at 17.) In fact, the disclosure explained the risks of acquiring new properties, even with extensive due diligence, noting that Hecla may not be able to "identify liabilities associated with the acquired properties" and that "[e]ven a detailed review of records and properties may not necessarily reveal existing or potential problems or permit a buyer to become sufficiently familiar with the properties to fully assess their condition, any deficiencies, and development potential." (*Id.* at 17.)

These warnings were substantively repeated throughout the Class Period in Hecla's public disclosures. (*See, e.g.,* ECF No. 96-1 at 16–17 ("The properties we acquire in any acquisition, including our recently-acquired Nevada Operations unit, may not produce as expected, may be in an unexpected condition and we may be subject to increased costs and liabilities."); *see also* ECF No. 96-4 at 62–63 ("The Klondex properties and any others we may acquire may not produce as expected and may not generate additional reserves, and may come with liabilities beyond those known at the time of acquisition."))' *see also* id., ("the acquisition itself "may cause a loss of management personnel and other key employees of Klondex"; that Hecla may not achieve the anticipated benefits of the acquisition for reasons including "higher than expected acquisition and operating costs or other difficulties"; and that Klondex's mines "may be in an unexpected condition."). These warnings, when read together, caution investors

of the very risks that Plaintiffs allege ultimately occurred—namely that the Nevada Mines were not in the condition they were initially thought to be and that the cost of operating those mines would ultimately be higher than expected.  This language is sufficiently specific to insulate Defendants from liability for its forward-looking statements. *See In re Bemis Co. Sec. Litig.*, 512 F. Supp. 3d 518, 534 (S.D.N.Y. 2021). Moreover, Defendants disclosed throughout the Class Period that various risks had materialized—actual negative conditions and poor performance in Nevada. That Hecla adhered to SEC regulations by also disclosing the possibility that additional adverse conditions could arise, or that current conditions could worsen, is not misleading. *Chapman*, 466 F. Supp. 3d at 406.

Accordingly, for the reasons stated above, Defendants' newly alleged forward-looking statements 1, 3-8 are protected by the PSLRA's safe harbor and are thus not actionable.

These statements also largely seem to be expressions of "puffery and corporate optimism" that "do not give rise to securities violations." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) (citation omitted); *see also Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 173 (2d Cir. 2020) ("Generic, indefinite statements of corporate optimism typically are not actionable."). Statements of puffery are so vague, broad, and non-specific that a reasonable investor would not rely on [them]." *In re Nokia Corp. Sec. Litig.*, 2021 WL 1199030, at *17 (citations omitted). These vague statements, including phrases such as "we saw extraordinary grades," (Statement 2), noting "excite[ment] about the exploration opportunities in northern Nevada," (Statement 3), and detailing belief in "significant opportunity for improvement" (Statement 4), are precisely the kind of language that Courts in this district have found inactionable corporate puffery. *See, e.g., Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 569-70 (S.D.N.Y. 2018) (statements suggesting "Xerox's confidence in its

competitiveness" and "vaguely and enthusiastically describ[ing] Xerox's performance, [and] expectations of business success" were non-actionable puffery); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129-30 (2d Cir. 1994) ("People in charge of an enterprise are not required to take a gloomy, fearful or defeatist view of the future; subject to what current data indicates, they can be expected to be confident about their stewardship and the prospects of the business that they manage."). *See Leadersel Innotech ESG v. Teladoc Health, Inc*., 2024 U.S. App. LEXIS 24196, *5-6 (setting forth corporate optimism standards).

### B.  Statement 2 Is Not Materially Misleading or False

"'The test for whether a statement or omission is materially misleading'. . . is not whether the statement is misleading in and of itself, but 'whether the defendants' representations, taken together and in context, would have misled a reasonable investor.'"  *In re Vivendi S.A. Sec. Litig.*, 838 F.3d 223, 250 (2d Cir. 2016) (quoting *Rombach v. Chang*, 355 F.3d 164, 172 n.7 (2d Cir. 2004).  This is an objective test that looks to the understanding of an "ordinary investor." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 187 (2015). *See also Meyer v. Jinkosolar Holdings Co., Ltd.*, 761 F.3d 245, 250 (2d Cir. 2014) ("The literal truth of an isolated statement is insufficient; the proper inquiry requires an examination of defendants' representations, taken together and in context." (quoting *In re Morgan Stanley Info. Fund Secs. Litig.*, 592 F.3d 347, 366 (2d Cir. 2010))).

Baker's statement, "[w]e saw three large, in this case, Nevada properties as big as those that we already have, and we saw extraordinary grades," (SAC ¶ 103), taken together and in context, would not have misled a reasonable investor. Plaintiffs do not identify any allegation of fact showing the Nevada Mines were not high grade. (Def. Br. at 20-21; Opp. at 3-4). Any

assumption about the profitability of these ores was Plaintiffs' own doing. Hecla disclosed processing costs—and they were high and increasing. Klondex had disclosed a 44% increase in costs of production at Fire Creek over the three-year period immediately before the acquisition. (Def. Br. at 2-3.) Then, Hecla's first financial report after the acquisition disclosed that production costs had skyrocketed from what Klondex had reported, with costs of production going from Klondex's reported $1,107/ounce to $1,932/ounce. (Id. at 5) Not only was that a 75% increase in costs, but it moved the cost of production above the price of $1,205 at which Hecla could sell gold. (Id.)

Plaintiffs contend this statement is false because Defendants "knew, or at least recklessly disregarded, and failed to disclose the material, negative fact that … Fire Creek contained refractory ore that could not be profitably extracted without substantial and uneconomical capital and operational costs." (Id. ¶ 104) But, as Defendants argue, Plaintiffs conflate the ore's "grade" with whether it is economic to extract it. Plaintiffs admit: "While refractory ore may be high grade, the costs to extract that gold can be astronomical." (SAC ¶ 11).

In *Colbert v. Rio Tinto PLC*, the Second Circuit upheld an SDNY's dismissal of conference statements made by coal mine investor because the complaint failed to plausibly allege that the statements in question were either false or materially misleading. *Colbert v. Rio Tinto PLC*, 824 Fed. Appx. 5, 9-10 (2d. Cir. 2020); *see, e.g.*, *In re Int'l Bus. Machines Corp. Sec. Litig.*, 163 F.3d 102, 106  (2d Cir. 1998) (noting that suits under Section 10(b) or Rule 10b-5 require the plaintiff to allege a false or misleading statement or omission). The Court noted that the statement that Defendant's presence in Africa was "growing" was truthful and as such it could not form the basis of a claim for securities fraud. *Id.* The Court noted, "[w]hile the mines investment may have been unwise, this is not, standing alone, enough to render the

statement that [Defendant's] presence was "growing" misleading or false." *Id.* Such is the case here. The statements regarding "high grade" mines are not actionable because they are neither false nor misleading. And, in any event, the phrase "we saw extraordinary grades," can likely be categorized as corporate optimism or puffery. *See Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) ("[E]xpressions of puffery and corporate optimism do not give rise to securities violations.").

Plaintiffs have failed to plead with specificity any false or misleading statement actionable under the securities laws.

## II.    Scienter

Because Plaintiffs have failed to plead any actionable misstatement or omission, the Court need not reach the question of whether Plaintiffs have adequately pleaded scienter. *See Singh v. Cigna Corp.*, 918 F.3d 57, 62 (2d Cir. 2019); *see also Oklahoma L. Enf't Ret. Sys. v. Papa John's Int'l, Inc.*, 444 F. Supp. 3d 550, 563 (S.D.N.Y. 2020). In addition, the Court finds that the Amended Complaint does not set forth sufficient facts alleging scienter, and thus Plaintiffs fail to state a claim as a matter of law as to all of Defendants' alleged misstatements.

## III.    Section 20(a) and Section 20A Claims

As Plaintiffs have failed to adequately allege their § 10(b) claim, the claims under § 20(a) also fail as a matter of law. *See S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996), *cert. denied*, 522 U.S. 812 (1997); *accord Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 139 (2d Cir. 2011). Likewise, Plaintiffs' insider trading allegations necessarily fail because they have failed to plead an adequate predicate § 10(b) claim. *In re LaBranche Sec. Litig.*, 405 F. Supp. 2d 333, 364 (S.D.N.Y. 2005).

## IV.    Denial of Leave to Amend

A district court is not required to grant leave to amend when it grants a motion to dismiss based on pleading deficiencies. *Banco Safra S.A.-Cayman Islands Branch v. Samarco Mineracao S.A.*, 849 Fed. Appx. 289, 296 (2d. Cir. 2021) (internal citation omitted). Whether to permit a "plaintiff to amend its complaint is a matter committed to a court's "sound discretion." Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." In particular, it is the usual practice to grant at least one chance to plead fraud with greater specificity when a complaint is dismissed under Rule 9(b). Leave to amend should be denied, however, where the proposed amendment would be futile. *In re Barrick Gold Secs. Litig*., 2015 U.S. Dist. LEXIS 43053, *15-16 (S.D.N.Y., Apr. 1, 2015).

As this Court has previously noted, given Defendants' disclosures regarding the negative conditions at the Nevada Mines and the paucity of allegations supporting Plaintiffs' allegations of falsity, the Court is doubtful that yet another amendment would certainly cure these defects. *See Colbert v. Rio Tinto PLC*, 824 Fed. Appx. 5, 11 (2d. Cir. 2020) (affirming district court's denial of leave to amend in securities mining case).

## **CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) is **GRANTED**. Accordingly, this case is dismissed with prejudice. The Clerk of Court is respectfully requested to terminate the pending motions at ECF No. 130 and to close this case.

**Dated:  September 30, 2024**
      **New York, New York**

_____

      **ANDREW L. CARTER, JR.**
      **United States District Judge**